IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-00265-FL

| | | |
|---|---|---|
| BEVERLY NICHOLS<br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO, Commissioner of Social Security<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This matter is before the court upon the parties' briefs filed pursuant to the court's September 24, 2025, notice under the Supplemental Rules for Social Security Actions. (DE 10). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., issued a memorandum and recommendation ("M&R") (DE 18), wherein it is recommended that the court uphold the decision of the Administrative Law Judge ("ALJ"). Plaintiff timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's decision is affirmed.

**BACKGROUND**

Plaintiff filed an application for Title II Disability Insurance Benefits September 1, 2021, alleging a disability onset date of July 24, 2021. Plaintiff's application was denied upon filing and again on reconsideration October 30, 2023. The ALJ then held hearing March 24, 2024. The ALJ rejected plaintiff's claim May 24, 2024. After the Social Security Appeals Council denied plaintiff's request for review, she commenced this action May 20, 2025, seeking reversal of the ALJ's decision, or in the alternative, a remand for a new hearing.

## COURT'S DISCUSSION

A. Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).[1] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The standard is met by "more than a mere scintilla of evidence . . . but less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, [which] should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo

---

[1] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the [listed] impairments; (4) the claimant can perform [her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to defendant at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since July 24, 2020. (Tr. at 61). At step two, the ALJ next found plaintiff "had the following severe impairments: diabetes mellitus; diabetic peripheral neuropathy; coronary artery disease; cervical spondylosis; cervical radiculopathy; and spinal stenosis[.]" (Id.). Next, the ALJ found at step three that plaintiff's impairment did not meet or equal the severity of one of the listed impairments. (Id. at 63).

The ALJ then found that plaintiff "had the residual function capacity to perform light work as defined 20 CFR 404.1567(b)." (Id. at 66). Turning to step four, the ALJ determined plaintiff "was capable of performing past relevant work as an office manager [] which is generally performed at the light exertional level, but was actually performed by the claimant at the medium exertional level[.]" (Id. at 72). Accordingly, the ALJ found plaintiff was not under a disability. (Id. at 73).

B. Analysis

Plaintiff argues the ALJ erred by "by failing to perform a function-by-function evaluation of Ms. Nichols's ability to perform manipulative activities (handling, fingering, lifting, and reaching) when formulating the residual functional capacity[,] and "by failing to evaluate Ms. Nichols's ability to rotate, extend, and engage in prolonged postural adjustments with her neck[.]" (Pl's Br. (DE 15) 1).

In the M&R, the magistrate judge determined the magistrate erred in interpreting portions of plaintiff's testimony, but that the ALJ's error was harmless. Next, the magistrate judge found the ALJ adequately explained her findings and credited the state agency's consultants when analyzing plaintiff's manipulative limitations, and, lastly, that substantial evidence supports the ALJ's conclusion that no RFC limitations were required due to plaintiff's limited neck mobility.

Plaintiff objects to the M&R on three grounds, arguing that 1) the misinterpretation of plaintiff's testimony was not harmless error; 2) that reliance on state agency consultants does not constitute substantial evidence; and 3) that the ALJ failed to adequately explain her findings regarding neck mobility. The court analyzes each objection in turn.

1. Harmless Error

"As a general proposition, [courts] apply the harmless error doctrine in reviewing a decision of the Commissioner denying a benefits claim." Keller v. Berryhill, 754 F. App'x 193, 199 (4th Cir. 2018). But, "[w]here an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 658, 662 (4th Cir. 2017) (finding an ALJ's error not harmless where "the ALJ noted other evidence that is admittedly pertinent to his conclusions, but he did not address conflicting evidence, or explain away contrary findings of other doctors in a comprehensive manner.").

At hearing, plaintiff testified that "she has problems looking up and down, and turning her neck left and right, and that the pain radiates down into her arms and hands, particularly with her right hand, causing her to lose grip and drop things", and, among other things, "she can only lift about a one-half gallon of milk." (Tr. at 66-67). Plaintiff also stated that "[s]he can only stand for about 30 minutes at one time and walk for about 30 minutes at one time." (Id. at 67).

The ALJ explained that "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 67). "Treatment notes, including the claimant's subjective reports to her treatment providers, simply fail to indicate the level of dysfunction the claimant is alleging." (Id.). The ALJ then went on to summarize the medical evidence in the record. (See id. at 67-70).

After summarizing the medical evidence, the ALJ found "[d]ue to her physical impairments, she is limited to work at the light level of exertion with the additional postural, manipulative, and environmental limitations found herein," and that [f]urther restrictions are neither warranted nor supported." (Id. at 70). The ALJ continued that "[t]o the extent that the claimant testified that she is more limited, that testimony is not consistent with the medical and other evidence of record" and provided several examples, including that "[t]here is no evidence in the medical evidence of record for her testimony that her neck surgery caused her arms and legs to stop working, as the medical evidence revealed that at follow-up appointments after her surgery, she reported that she was pleased with the results." (Id.). At hearing, however, plaintiff testified that her neck surgery did not fix all her issues because "It was not possible. My arms and legs stopped working when they tried to insert the spacers to allow my nerves to expand, so it's not fixable." (Id. at 24). Accordingly, the ALJ's summarization of plaintiff's testimony as "that her neck surgery caused her arms and legs to stop working" rather than her arms and legs stopped working when she "tried to insert the spacers to allow my nerves to expand" was an error. (See id. at 24, 70).

However, the court agrees this error was harmless. The ALJ's error was not of the kind in Patterson where the ALJ failed to resolve conflicting evidence or adequately explain her findings. Id. at 662. Rather, the ALJ found that there was "no evidence in the medical evidence of record for her testimony that her neck surgery caused her arms and legs to stop working[.]" (Tr. at 70). The ALJ did not fail to resolve conflicting evidence on this issue because plaintiff's testimony, which the ALJ erroneously misinterpreted, was that "[m]y arms and legs stopped working when they tried to insert the spacers to allow my nerves to expand, so it's not fixable." (Id. at 24).

Accordingly, plaintiff does not argue there is evidence in the medical record, or in plaintiff's testimony, supporting the opposite of the ALJ's finding.

Instead, plaintiff argues that the ALJ's misinterpretation of plaintiff's testimony weighed against the ALJ finding plaintiff's testimony credible. But the ALJ emphasized she did not credit plaintiff's testimony because it conflicted with the medical evidence. (Tr. at 67, 70). As noted above, there is no conflict in the evidence for the ALJ to resolve in the medical evidence or in plaintiff's testimony on this issue. Cf. Patterson, 846 F.3d at 662 (finding error not harmless where "[t]he ALJ noted other evidence that is admittedly pertinent to his conclusions, but he did not address conflicting evidence, or explain away contrary findings of other doctors in a comprehensive manner"); Keller, 754 F. App'x at 199.

Accordingly, while the ALJ erred, this error does not warrant remanding the case.

2. State Agency Consultants

"A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984). In Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit held that: "The ALJ cited the state medical opinions in support of his conclusion, but that is not enough to constitute 'substantial evidence.'" Id. at 295. "Even if the ALJ's exclusive citation to those opinions indicates the (apparently very high) evidentiary weight he placed on them, it does not indicate why the opinions merit that weight." Id. The court of appeals continued: "the ALJ appeared to totally—and without explanation—reject the opinions of Radford's treating physicians in favor of the state medical examiners; this raises red flags because the state medical opinions are issued by non-examining physicians and are typically afforded less weight than those by examining and treating physicians." Id. at 295-96.

Regarding plaintiff's manipulative limitations, the state agency consultants provided among other things, "it was assessed that [plaintiff] could frequently, but not constantly, handling and finger with the bilateral upper extremities[.]" (Tr. at 71). In her decision, the ALJ found "the administrative findings of the State agency medical consultants regarding the claimant's physical impairments persuasive." (Id.). The ALJ continued that: "The experts offered support for their findings, citing objective findings and clinical signs from the record as constituted at the time their findings were made. Although additional evidence has been submitted since that time, that evidence does not support a finding that the claimant's condition is materially different now than it was at the time the findings were made. Thus, the findings remain consistent with the medical and other evidence as a whole." (Id.). As to mental impairments, the ALJ similarly found "the administrative findings of the State agency medical consultant regarding the claimant's mental impairments persuasive" for the same reasons. (Id.).

Plaintiff argues that "The Magistrate's determination that 'The ALJ's RFC determination concerning Claimant's manipulative limitations appears to based primarily on the limitations expressed in the state agency consultants' opinions and therefore, based on substantial evidence' plainly runs counter to established law and precedent in this Circuit." (Pl's Objs. (DE 19) at 3).

Plaintiff, however, overstates the holdings of Radford and related cases. In Radford, the ALJ's reliance on state medical opinions do not constitute substantial evidence because "[e]ven if the ALJ's exclusive citation to those opinions indicates the (apparently very high) evidentiary weight he placed on them, it does not indicate why the opinions merit that weight." Id. at 295 (emphasis original). Here, the ALJ explained she found the state medical opinions persuasive because: "The experts offered support for their findings, citing objective findings and clinical signs from the record as constituted at the time their findings were made" and that "the findings remain

consistent with the medical and other evidence as a whole" despite later submitted evidence. (Tr. at 71). Nor did "the ALJ [] totally—and without explanation—reject the opinions of [plaintiff's] treating physicians in favor of the state medical examiners" as in Radford. Id. at 296-97; (see Tr. at 67-71).

Indeed, "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Millner, 725 F.2d at 245. While plaintiff cites evidence in the record supporting her claims, mainly her testimony, the ALJ also cited to extensive record evidence and explained why she did not credit her testimony and then explained why she found the state agency consultants persuasive. (See Tr. at 67-71). Therefore, the state agency consultants' findings were not "contradicted by all other evidence in the record." Millner, 725 F.2d at 245.

Accordingly, substantial evidence supports the ALJ's manipulative limitations determination.

3. Range of Motion Limitations

Plaintiff argues that she "presented evidence that [range of motion limitations] would be a condition that could impact her ability to work. Though the Magistrate [judge] decided that this 'evidence shows Claimant does not require range-of-motion limitations due to her neck pain' this decision was made in error as it was the ALJ and not the Magistrate [judge] who should have evaluated this evidence in the first instance to reach this conclusion." (Pl's Objs. (DE 19) at 3) (emphasis original).

There is no per se requirement that an ALJ must conduct an explicit function-by-function analysis; rather, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). When the court "[is] left to guess about how the ALJ arrived at his conclusions on [the plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary." Id. at 637.

At hearing, plaintiff testified that "she has problems looking up and down, and turning her neck left and right." (Tr. at 66). On this issue, the ALJ also noted plaintiff's primary care provider found in June 2023 that plaintiff displayed "normal movement of all extremities, full range of motion in her neck and shoulders[.]" (Tr. at 70).

Contrary to plaintiff's contention, the record shows the ALJ considered plaintiff's testimony, including her neck issues and chose to credit plaintiff's medical records over her testimony. The ALJ noted that "[t]o the extent that the claimant testified that she is more limited, that testimony is not consistent with the medical and other evidence of record[.]" (Id.). Indeed, plaintiff's records indicated she had "normal movement of all extremities, full range of motion in her neck and shoulders[.]" (Tr. at 70).

Accordingly, this is not an instance where the court "[is] left to guess about how the ALJ arrived at h[er] conclusions" as in Mascio. 780 F.3d at 637 (4th Cir. 2015). Rather, the record shows the ALJ considered both plaintiff's testimony and her medical records and chose to credit her medical records instead.

Plaintiff cites to Salter v. Kijakazi, No. 2:20-CV-43-BM, 2021 WL 4501871 (E.D.N.C. Sept. 30, 2021) where the court found remand necessary because "Plaintiff's ability to rotate and twist his neck is a contested function and at least contradictory evidence exists regarding his ability to rotate and twist his neck. The assessment of this function is also critically relevant to, and

potentially outcome determinative of, Plaintiff's disability status[,]" and the ALJ did not adequately explain their findings or resolve conflicting evidence on this issue. Id. at *5.

In the instant case, however, the ALJ did resolve the conflicts in the evidence. As discussed above, the ALJ discussed plaintiff's testimony and explained why she did not find it credible. The ALJ then stated she instead credited plaintiff's medical records which reflected plaintiff had "normal movement of all extremities, full range of motion in her neck and shoulders[.]" (Tr. at 70).

In sum, the ALJ adequately explained her findings and the determination that no range-of-motion of limitations were required.

**CONCLUSION**

Based on the foregoing, the court ADOPTS the M&R (DE 18), and the final decision of the Commissioner is AFFIRMED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge